United States District Court
Northern District of California

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AGUSTO CESARE GHIDONI,<br><br>Defendant. | Case No.: CR 13-71365-MAG<br><br>ORDER REGARDING PRELIMINARY HEARING AND VACATING CONDITIONS OF RELEASE SET ON NOVEMBER 19, 2013 |

## I. BACKGROUND

On December 20, 2010, Agusto Cesare Ghidoni was sentenced to 18 months in custody and three years of supervised release for conspiracy to transport illegal aliens. The United States District for the Western District of Texas retained jurisdiction over the underlying criminal action. Jurisdiction over Defendant's supervision was transferred to this district.

On October 29, 2013, Defendant's probation officer filed a petition, alleging that Defendant had violated the conditions of his supervised release. Specifically, the probation officer alleged that Defendant had violated the following conditions: Defendant shall not commit another federal, state, or local crime during the term of supervision; Defendant shall not unlawfully possess a controlled substance, shall refrain from any unlawful use of a controlled substance, and shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court; and Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.

Defendant's arrest is the basis for the first violation alleged in the petition, i.e., that Defendant committed another federal, state, or local crime during the term of his supervised

DETENTION ORDER
CR 13-71365-MAG                                                       1

release. On September 7, 2013, two Bay Area Rapid Transit ("BART") police officers responded to a call regarding a domestic battery. The officers arrived at the scene. They were advised that Defendant had spit on the victim, choked her, and punched her in the face as she was screaming and attempting to get away from him. The officers observed Defendant screaming at the victim and holding her in a "bear hug." Defendant was distraught, apparently screaming and crying. Witnesses confirmed the events. Defendant was arrested under California Penal Code § 243(e)(1) (battery against a spouse).

The District Judge found probable cause and issued a warrant for Defendant's arrest on October 29, 2013. The warrant reads: "Bond is set in the amount of $ <u>detain</u> cash/surety with supervision by the United States Probation Office to continue as a condition of release."[1]

Defendant was arrested, and on November 19, 2013, the court held a preliminary hearing on whether there was probable cause to believe that Defendant violated the conditions of his release by committing another federal, state, or local crime during the term of supervision. The court also heard the Government's motion to detain Defendant pending his supervised release revocation hearing.[2] Defendant was present, in custody, and represented by Public Defender Angela Hansen. Assistant United States Attorney Rodney Villazor appeared on behalf of the Government. The court heard testimony from Probation Supervisor Mark Messner,[3] who supervises Defendant's probation officer, and Brittany Martin, the alleged victim.

After a full hearing, the court found that there was no probable cause to believe that Defendant committed a battery on the victim. The court also found that Defendant showed that he is not a flight risk or a danger to the community by clear and convincing evidence. For the reasons stated below, however, the court now vacates the conditions of release fashioned on

---

[1] The word "detain" occupies the blank space typically reserved for a dollar amount. This court understood the wording in the warrant to indicate that it was a typical no bail warrant normally issued by the district court on the standard Form 12 Petition.

[2] Defense counsel confirmed that the two other violations alleged in the petition are not at issue.

[3] Probation Supervisor Messner testified primarily as to the conditions of Defendant's supervised release.

DETENTION ORDER
CR 13-71365-MAG                          2

November 19, 2013. The court hereby orders Defendant remanded to custody and transferred immediately to the Western District of Texas, the charging district, for further proceedings.

## II.    LEGAL ANALYSIS

**A.    The court found that there was no probable cause to believe that Defendant committed another federal, state, or local crime in violation of the conditions of his release.**

The court held a preliminary hearing pursuant to Federal Rule of Criminal Procedure 32.1(b). That rule specifically affords a defendant the right to a preliminary hearing in the district of arrest when an alleged supervised release violation occurs in that district. FED. R. CRIM. P. 32.1(a)(5) ("If the person is arrested or appears in a district that does not have jurisdiction to conduct a revocation hearing, the magistrate judge *must* (A) if the alleged violation occurred in the district of arrest, conduct a preliminary hearing under Rule 32.1(b) . . . . ") (emphasis supplied). That rule further provides that where the alleged violation occurred in the district of arrest, the magistrate judge must either: "(i) transfer the person to the district that has jurisdiction, *if* the judge finds probable cause to believe that a violation occurred; or (ii) dismiss the proceedings and so notify the court that has jurisdiction, *if* the judge finds no probable cause to believe that a violation occurred." FED. R. CRIM. P. 32.1(a)(5)(A) (emphasis supplied). In this district, the criminal calendar Magistrate Judge may conduct a preliminary hearing to determine whether there is probable cause to believe that a supervised release violation has occurred. CRIM. L.R. 32.1-1.

At the hearing, the Government referenced portions of the BART police report[4] in support of its argument that there was probable cause to believe Defendant committed a federal, state, or local crime based on the events culminating in the September 7, 2013 arrest. Officer Torres, one of the responding officers, reported that Defendant was screaming and holding the victim in a bear hug. Officer Torres noted that the victim was trying to break free from Defendant's grasp. He also indicated that it did not appear as though Defendant was attempting to hurt the victim at that point in time. The officer also reported that Defendant was extremely distraught and crying.

---

[4] A copy of the BART police report was admitted into evidence.

The Government also referenced the police report description of statements made to the reporting officer by Alana Brooks. Ms. Brooks stated that she observed Defendant and the victim sitting on a curb, arguing. She stated to the officer that she saw Defendant spit in the victim's face. The victim proceeded to stand up and walk away, but Defendant grabbed her by the throat and hit her in the face. Ms. Brooks could not discern whether Defendant had struck the victim with an open hand or a closed fist. According to Ms. Brooks, the victim attempted to walk away from Defendant, but he continued to grab and pull her, as the victim screamed "get away from me," "you're crazy," "let me go."

The Government also highlighted the portions of the police report containing the account of another witness, Jesse Chapman. Mr. Chapman indicated that Defendant and the victim were screaming at each other, that Defendant kept grabbing the victim to prevent her from leaving, and that the victim kept screaming "let me go." Mr. Chapman did not see Defendant strike the victim, but did observe "aggressive shoving." Mr. Chapman indicated that he drove by the couple and asked the female victim whether she was okay. Defendant responded that they were fine.

Defense counsel effectively challenged the Government's portrayal of the September 7, 2013 incident. First, defense counsel highlighted that Officer Torres reported that it did not appear as though Defendant was attempting to hurt the victim, that the victim did not have any marks or bruises on her face or arms, and that the victim did not require medical attention. Officer Torres also stated in the report that the victim indicated that she and Defendant were arguing about money problems and that they were stressed out because they were suffering from heroin withdrawal. Second, defense counsel noted that Mr. Chapman asked the victim whether she was okay, then left upon Defendant's response that they were fine. Mr. Chapman did not call the police, nor did he file a report, undermining the Government's argument that the incident was sufficiently serious to warrant police intervention.

Third, the defense called Brittany Martin, the alleged victim, as a witness at the hearing. Ms. Martin testified that after suffering the onset of heroin withdrawal symptoms, she and Defendant were transported to the hospital. They were treated overnight and medicated, but discharged early the next morning. She and Defendant then traveled to Pittsburg to obtain heroin,

because she knew that the withdrawal symptoms would return once the effects of the medication wore off. Ms. Martin also testified that she and Defendant were at the BART station when they began "a very stupid argument" over whether they were going to use their remaining $5.00 to buy cigarettes or a ticket for the train ride home.

Ms. Martin did not recall the exact words she used during the argument, but she did remember Defendant telling her to "trust him" and reassuring her that he would get them a ride home. She remembered telling him that he was "crazy" and that they could wait for cigarettes until they returned home. Ms. Martin testified that she was anxious to get home so that she and Defendant could use the heroin they had just obtained in Pittsburg.

According to Ms. Martin, she and Defendant began yelling at each other as they were sitting right next to each other. Ms. Martin testified that Defendant did not spit on her. She also testified that she had stood up at one point to walk away because she was "overreacting" and that she wanted to leave because she and Defendant "just couldn't come to an agreement." She told Defendant that she "was done," that is, "done with th[e] relationship." Defendant grabbed her hand as she was walking away to pull her back and plead with her to say. She continued to walk away. Defendant continued to yell at her, saying that she was causing "a scene." At one point, Defendant placed his hands on Ms. Martin's shoulders to, in her own words, "try to get her to listen to him." Ms. Martin grabbed Defendants' wrists and threw his hands off of her shoulders. Ms. Martin testified that Defendant did not choke her, slap her in the face, punch her in the face, or shove her. She testified that the physical contact was in no way "offensive" or "harmful."

The accounts Mr. Chapman and Officer Torres provided, as described by the Government, were consistent with Ms. Martin's testimony. This reinforced Ms. Martin's recitation of the events. Given that Ms. Martin is the alleged victim, and in light of her testimony that Defendant did not strike, slap, or other physically touch her in any offensive or harmful way, and that there was no physical evidence of her being battered, the court found that there was no probable cause to believe that Defendant committed a battery on Ms. Martin.

//

//

### B.  Defendant showed that he is not a flight risk or a danger to the community by clear and convincing evidence.

On November 19, 2013, the court also held a detention hearing pursuant to Federal Rule of Criminal Procedure 32.1(a)(6).  That rule permits the magistrate judge to "release or detain the person under 18 U.S.C. § 3143(a)(1) pending further proceedings."  FED. R. CRIM. P. 32.1(a)(6).  By local rule, the criminal calendar Magistrate Judge may also "[h]ear and determine motions or matters regarding release or detention."  CRIM. L.R. 7-1(b)(6).  Because Defendant is charged with a supervised release violation, he bears the burden of establishing that he is not a flight risk or a danger to any other person or the community by clear and convincing evidence.  FED. R. CRIM. P. 32.1(a)(6); 18 U.S.C. § 3143.

Defendant's underlying conviction was for conspiracy to transport illegal aliens.  The remaining allegations in the instant petition concern drug-related supervised release violations, including possession and use of heroin.  Indeed, the September 7, 2013 incident serving as the basis for one of the alleged supervised release violations was, based on the varying accounts of the events, a likely result of Defendant's withdrawal symptoms.

During the November 19, 2013 hearing, Defendant stated that he obtained treatment in 2011.  Once he completed that drug treatment program, he was no longer being drug tested.  As a result, he began smoking marijuana and using heroin, even though he had successfully completed over two years of his supervised release term without incident.  Defendant also indicated that he had attempted to obtain drug treatment in early October 2013, but that he had been turned away due to sequestration.  Defense counsel indicated that Pretrial Services arranged an interview with New Bridge, a residential drug treatment program, and Defendant has been accepted into the program.  In light of this information, the fact that funds are now available, and considering Defendant's history, the court found that sending Defendant to New Bridge was a suitable alternative to detention pending revocation proceedings.  The court also found that placing Defendant in such a facility would mitigate any risk of flight or danger to any other person or the community.

Accordingly, the court found that Defendant showed that he is not a risk of flight or a danger to any other person or the community by clear and convincing evidence.

### III.  CONCLUSION

After a full hearing, the court found that there was no probable cause to believe that Defendant committed a federal, state, or local crime on September 7, 2013, in violation of the conditions of his supervised release.  The court also found that Defendant had shown that he is not a risk of flight or a danger to any other person or the community by clear and convincing evidence.  Having so found, the court ordered that Defendant be released to New Bridge, a residential drug treatment facility, pending further proceedings in the Western District of Texas.  The court noted that Defendant did not have a pending court date in the charging district.  The Government did not appeal Defendant's release.

On November 22, 2013, the District Judge who retains jurisdiction over the underlying criminal action contacted the undersigned.  She indicated that this court was to construe the language appearing in the warrant issued on October 29, 2013 as an instruction to detain Defendant pending his supervised release violation hearing in the charging district.  Notwithstanding the reasoning set forth above, the court hereby vacates the conditions of release fashioned on November 19, 2013.  The court therefore orders that Defendant be detained and immediately transferred to the Western District of Texas for further proceedings.

IT IS SO ORDERED.

DATED: November 26, 2013

KANDIS A. WESTMORE
United States Magistrate Judge

DETENTION ORDER
CR 13-71365-MAG                                            7